No. 13,768.

RIO GRANDE FUEL COMPANY *v.* COLORADO CENTRAL POWER
COMPANY.
(63 P. [2d] 470)

Decided December 7, 1936.

Messrs. ALTER & UPTON, for plaintiff in error.

Mr. J. E. McCALL, for defendant in error.

*In Department.*

MR. JUSTICE HOLLAND delivered the opinion of the court.

THE Rio Grande Fuel Company, a corporation, assigns error to a judgment entered against it upon a trial to the court and against its codefendant, the Bluebird Mines, Inc., on default of the latter, in an action wherein Colorado Central Power Company, a Delaware corporation, was plaintiff. Reference will be made to the parties as plaintiff, the Bluebird, and Rio Grande.

Plaintiff, before and during July, August, September and October of the year 1932, was engaged in the business of selling electrical current and power. It furnished such electrical power for the operation of the Bluebird or Rooney coal mine in Jefferson county. During the year 1931 and prior thereto, the Bluebird Mines, Inc., operated this mine. In the early part of the year 1931, the operations of the mine were not financially successful and the Bluebird entered into some arrangement with Rio Grande whereby Rio Grande was to purchase the output of the mine save and except such coal as was sold to the wagon or truck trade at the mine. The evidence discloses that at times of financial stress, Rio Grande advanced money to the Bluebird and paid some of its obligations direct. It also appears that after Rio Grande had such an investment in the operations as it desired to protect, it became more directly connected with the operation of the mine, the understanding or arrangement about which is not clear from the record. It does appear, however, that Bluebird changed its office management of the mine to a new location at the office of Rio Grande; that an employee of Rio Grande attended to some of the bookkeeping for the Bluebird; that generally, moneys advanced by Rio Grande went into the treasury of the Bluebird and salaries and like expenses were paid by Bluebird checks; that during this time plaintiff was furnishing power for mining operations, the record being silent as to the method used in payment therefor until

about July, 1932, when, plaintiff not receiving prompt remittance for its current bills, it called the offices of the Bluebird, and the plaintiff's manager testified that he had a telephone conversation with Peterson, the manager of the Rio Grande, about a settlement of the bill in which Peterson assured him that the power bills would be taken care of and that he had nothing to worry about as Rio Grande was a responsible concern; this is denied by Peterson, however the record does not show that the witness testified that Rio Grande agreed to pay; that the five current bills concerning the period from July to October, 1932, part inclusive, making up the sum of $699.80, on which this suit was brought, were sent to Bluebird Mines, Inc., in care of Rio Grande Fuel Company; that $100 was paid by Rio Grande check for a September period and credited on the account; that this transaction is explained by the testimony of Peterson, a witness for plaintiff, and by defendant's Exhibits 1 and 2; that September 26, 1932, a fire occurred at the mine which stopped all further operation.

Plaintiff filed its complaint against both Bluebird Mines, Inc., and the Rio Grande Fuel Company, alleging that electric current and power of the value of $599.80 had been sold and delivered to defendants at their special interest and request, and praying judgment in that sum. The defendant Rio Grande answered admitting that it was a corporation; admitting payment of the $100 and alleging that about September 1, 1932, it agreed and promised to pay plaintiff that sum and no more to apply on electric service to be furnished by plaintiff to Bluebird during the month of September, and that it paid the same October 4, 1932. It denied every other allegation in the complaint. Bluebird failed to appear and default against it was entered. Trial was had to the court upon the complaint and answer of the Rio Grande. All witnesses testifying were called for direct examination by the plaintiff and at the close of plaintiff's case, defendant

rested and moved for judgment. This motion was denied and judgment entered against both the defendants. Defendant assigns as the principal error that no contract existed between the defendants upon which any liability in favor of plaintiff could be predicated.

The trial court, in entering judgment for plaintiff in the sum of $599.80 with interest, did so, as disclosed by its remarks, on the theory that Rio Grande took over the Bluebird, received all of its income, managed the mine, and therefore was liable for the debts created during the time involved and it stated that there was some dispute as to just what took place. Ordinarily such findings are binding upon this court unless it clearly appears that they are not supported by the evidence. We think the evidence in this case does not support the finding. Some of the witnesses were officials and employees of the Rio Grande, however, not being called by plaintiff for cross-examination under the statute, the latter was bound by their testimony; further, in our opinion, the controlling evidence is the written exhibits, upon which this court may place its own interpretation with the same opportunity as the trial court to judge the weight of such evidence. We believe the trial court misapprehended the situation as to the so-called conflicting testimony.

The only evidence purporting to fix liability on the Rio Grande was an attempted showing that it was operating the mine and therefore liable for the power bill. There is no testimony which tends to show that Rio Grande was operating the mine under any arrangement whereby it became liable for such bill, and no testimony that it ever contracted or agreed to pay it. Exhibits 1 and 2 conclusively prove that there was no obligation upon the part of Rio Grande to pay the power bills here sued upon except a part of the September bill, Exhibit 1 further conclusively showing that there was no liability upon it prior to September 1st. These exhibits are as follows:

### Exhibit 1.

"Colorado Central Power Company
   "Golden, September 23, 1932.
"The Rio Grande Fuel Company
"123 Santa Fe Drive, Denver, Colorado
"Attention: Mr. Peterson
"Gentlemen:

"The current bill for the Bluebird Mine is $139.80 which covers energy used at the mine from August 18, 1932, to September 15, 1932, or our meter reading dates for this district.

"Apparently this meter was not read on September 1. Therefore the amount of the bill from September 1 to September 15 will have to be prorated as follows: $139.80 divided by 28, the number of days between the meter readings = approximately $5.00 per day.

"15 days of consumption at $5.00 per day = $75.00, the amount of the bill from September 1 to September 15, which we understand you have agreed to pay.

   "Very truly yours,
   "Colorado Central Power Company,
   "C. G. Miner, District Manager."

### Exhibit 2.

"Colorado Central Power Company
   "Golden
      "October 22, 1932.
"Mr. Elmer H. Peterson, President
"The Rio Grande Fuel Company
"Second and Santa Fe, Denver, Colorado
"Dear Mr. Peterson:

"We have credited your account with the $100.00 check received under date of October 4, 1932. However, I believe we are justified in expecting payment of the entire amount due for September.

"The Meter was not read on September 1, but by prorating the total bill from August 18 to September 15, the

energy used per day amounts to $5.00. From September 1 to September 15, therefore, the energy consumption would amount to $75.00 and from September 15 to September 30, the amount used was $86.40, making a total for the month of September of $161.40. After deducting your payment of $100.00, the balance due for energy used during the month of September was $61.40.

"I believe it is entirely fair to expect you to pay this amount.

"Yours very truly,

"Colorado Central Power Company

"R. W. Booze, General Manager"

"cc—Mr. C. G. Miner."

The above exhibits disclose the manner in which plaintiff and Rio Grande construed the liability and of course afford the most accurate guide in ascertaining what it was. They clearly disclose that plaintiff did not understand that it had any right to expect more than the amount of $100.00 for which it was attempting to adjust the meter readings. Plaintiff contends that the effect of the evidence is that Rio Grande was a guarantor for, or a partner with, Bluebird. It did not so formulate its complaint, and such contention is an admission that no original liability existed between plaintiff and Rio Grande as pleaded, and that this suit was not predicated on a guaranty. The allegations of the complaint are insufficient to state a cause of action on guaranty to which position, upon the trial, plaintiff shifted from his pleaded action on contract.

We find that the court based its judgment upon an incorrect interpretation of the evidence in the case, and therefore reverse its judgment.

Mr. Justice Burke, sitting for Mr. Chief Justice Campbell, and Mr. Justice Young concur.